371 S.E.2d 333

STATE of West Virginia

v.

Wayne McPHERSON.

No. 17355.

Supreme Court of Appeals of West Virginia.

July 1, 1988.

---

Jill Miles, Asst. Atty. Gen., for the State.

Randy Dean Gossett, Wheeling, for appellant.

## PER CURIAM:

This case is before the Court upon the appeal of Wayne McPherson from his conviction of third degree sexual assault. It arises from an order of the Circuit Court of Ohio County which denied the appellant's motion for a new trial. The trial court sentenced the appellant to serve one to five years in the state penitentiary. On appeal, the accused contends (1) that the trial judge erred when she refused to grant the appellant's motion for acquittal due to insufficiency of the evidence; (2) that the trial judge erred when she refused to appoint a psychologist to evaluate the prosecutrix's competency to testify; and (3) that the trial judge erred when she refused to grant the appellant's motion for mistrial due to the prosecutor's comments in closing argument. We disagree and affirm.

The accused, age 20 at the time of the alleged incident, was indicted and tried on sexual assault in the second degree and

third degree.[1] The jury acquitted the defendant of second degree sexual assault and convicted him of third degree sexual assault. Third degree sexual assault is commonly referred to as statutory rape. The prosecutrix, E.M., both at the time of the alleged incident and at trial, was fourteen years old.

In a brief one-day trial, the State called as its witness the prosecutrix, E.M., her fourteen-year-old friend, M.B., and an FBI agent.

The prosecutrix, age fourteen, was in the sixth grade for the third consecutive year. After an *in camera* hearing where the court declared her competent, she testified that shortly after Christmas, 1984, she and M.B. went for a ride with the accused and his brother. The four went to a trailer in Wheeling, West Virginia, where E.M. and the accused went into a bedroom and the other two remained in the living room. The prosecutrix testified that she and the accused were in the bedroom "for a long time." She then described the actions between her and the accused, consisting of intercourse with penetration. Further details of the act itself were not elicited. Many leading questions were used to establish forcible compulsion, an element of second degree sexual assault, for which the jury acquitted the accused.

The prosecutrix made three prior inconsistent statements which were extensively used by defense counsel during cross-examination. First, the prosecutrix testified that the accused gave her "sucker bites." However, she initially told her mother the "sucker bites" were given to her by a former companion. At trial, she testified that this false explanation was due to fear that her mother would discover she was with the accused. Second, the prosecutrix told her examining physician that she was the victim of a violent, multiple, two-day rape by an unknown assailant. The prosecutrix testified that she did not recall supplying such a history. Third, the prosecutrix read, understood and signed an affidavit, prepared by counsel for the accused, which stated that she had never engaged in sexual intercourse with the accused. She testified that when she signed the affidavit, she was accompanied by the accused's mother, who threatened her.

An FBI agent testified that samples and specimens were properly collected from the prosecutrix's body within thirty hours of the alleged incident. The prosecutrix had not washed between the time of the incident and the treating physician's examination and collection of evidence. The agent testified that no foreign pubic hairs, semen, foreign blood specimens or foreign tissue in fingernail scrapings were found. The prosecutrix's clothing was also of little evidentiary value.[2]

---

1. The indictment was based on the following pertinent statutes:

   *W.Va.Code*, 61–8B–4(a)(1) [1984]: "A person is guilty of sexual assault in the second degree when: (1) such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion;"

   *W.Va.Code*, 61–8B–5(a)(2) [1984]: "A person is guilty of sexual assault in the third degree when: ... (2) Such person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and at least four years younger than the defendant."

   The indictment, for both counts, specifically alleged intercourse. Intercourse is defined as "any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person." *W.Va.Code*, 61–8B–2(7) [1984].

2. The prosecutrix did not return home following the encounter. She testified that she spent the night at her friend, M.B.'s home, and that the following day, she borrowed her friend's clothing. The mother of the prosecutrix testified for the sole purpose of stating that M.B.'s mother had washed the clothing, despite the prosecutrix's mother's request that the clothing be returned to her unwashed. M.B. testified that the prosecutrix did not spend the night with her or borrow her clothing. In an earlier police statement, M.B. was never asked whether the prosecutrix spent the night at her home or borrowed her clothing.

   Further, little information is known about a very important piece of clothing, the prosecutrix's jacket. In her statement to police officers shortly after the incident, the prosecutrix said that the two engaged in intercourse with the jacket underneath her lower body. She also stated that following intercourse she noted a white murky substance on the jacket. However, she later testified that she did not know if he

The prosecutor then called M.B., who, shortly after the incident, gave a tape recorded statement to the police. M.B.'s tape recorded statement corroborated E.M., insofar as placing the four at the trailer. However, it undermined the second degree sexual assault charge. In the statement, M.B. recalled that E.M. induced the incident, and that at one point E.M., nude, exited the trailer bedroom, giggled, and said she was having fun.[3]

When M.B. took the stand, she denied being with E.M. that night, or ever having been at the trailer. The prosecutor then offered the prior statement which was played to the jury.[4]

Counsel for the accused called two witnesses. One, a juvenile, testified that the prosecutrix had the "sucker bites" a few days before the alleged incident.[5]

The other defense witness was the examining physician, Dr. Mandac, who, within thirty hours of the alleged incident, examined the prosecutrix and collected specimens and samples for the FBI. The prosecutrix had not washed. Based on the lack of vaginal trauma, plus the lack of any physical evidence (foreign hairs, semen or blood), the doctor opined that the prosecutrix had not engaged in sexual intercourse with anyone. He testified that, in his experience, examinations of an unwashed female within forty-eight hours of intercourse would leave some physical evidence.

The doctor later admitted, however, that under the broad statutory definition of intercourse as "penetration, however slight," he could not say that intercourse had not occurred.

After one and one-half hours of deliberation, the jury acquitted the accused of second degree sexual assault and convicted him of third degree sexual assault, statutory rape.

## I

The accused's first assignment of error is the trial judge's denial of his motion for

---

ejaculated. The jacket was tested and did not reveal any semen. The investigating officer stated that this may have been due to exposure to the cold, damp weather. However, the jacket was not introduced as evidence, therefore, the whereabouts of the jacket following the incident and the time of testing were never revealed.

3. In her statement M.B. admitted that prior to giving her statement she spoke with the accused's brother, whom she had been seeing socially.

4. Trial counsel for the accused objected, contending the statement violated the best evidence rule. Appellate counsel, in his brief, specifically waived all errors except those alleged in the brief, which did not include the admission of the taped statement. *See State v. Fellers,* 165 W.Va. 253, 267 S.E.2d 738 (1980) on the State's ability to sparing use prior unsworn statements to impeach a State's witness who testifies contrary to the prior statement. The trial judge admitted the prior statement and gave a confusing cautionary instruction concerning the limited evidentiary use of prior inconsistent statements. During closing argument, the prosecutor treated the taped, unsworn statement as original evidence. *See State v. Spadafore,* 159 W.Va. 236, 220 S.E.2d 655 (1975), requiring that such statements not only satisfy *West Virginia Rules of Evidence* 801(d)(1)(A) but also have been subject to cross-examination in order to be admitted as original evidence.

5. While cross-examining the juvenile, the last witness to testify prior to submitting the case to the jury, the prosecutor asked a series of questions which established that the accused was the boyfriend of the witness' sister, age fifteen, and that the two had stopped going out, as of three weeks prior to trial. Counsel for the accused did not object to the series of questions at trial or raise the issue on appeal as "proof which *tends to show* that the accused is guilty of the commission of other crimes not charged." (emphasis added). *West Virginia Rules of Evidence* 404(b). *See State v. Dolin,* 176 W.Va. 688, 695, 347 S.E.2d 208, 215 (1986):

[S]exual crime cases are by their very nature likely to be highly offensive to the average jury. Thus the ability to further prejudice the jury by admitting additional collateral sexual offenses is even more apparent.

Bearing on this problem is the fact that the guilt of a defendant in a sexual offense case can be based solely on the uncorroborated testimony of the victim. We held in Syllabus Point 5 of *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234, 31 A.L.R.4th 103 (1981), that the uncorroborated testimony of the victim in a sexual offense case is sufficient to uphold a conviction, unless the testimony is inherently incredible. *See also* Syllabus Point 4, *State v. Green,* 163 W.Va. 681, 260 S.E.2d 257 (1979); *State v. Golden,* 90 W.Va. 496, 111 S.E. 320 (1922). For this reason, courts should be particularly wary of collateral sexual offense evidence and should be cautious in admitting such evidence.

**616**

acquittal based on insufficiency of the evidence.

The standard for appellant review of a trial judge's ruling on motions for acquittal based on the sufficiency of the evidence was first stated in syllabus point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

■ For the trial judge hearing a sexual offense case, the standard for assessing a motion for acquittal is stated in syllabus point 5 of *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234, 31 A.L.R.4th 103 (1981): "A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is ordinarily a question for the jury." [6]

**6.** The standard in *Beck* broadens the application of the standard contained in syllabus point 4 of *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), which previously applied only to rape cases. In *Beck*, the defendant sought to limit *Green* by requiring corroboration when there is evidence of a possible motive to bring a false charge by a young prosecutrix. After reviewing the policy considerations noted in *Green*, this Court refused to adopt a corroboration requirement.

The Court reasoned that, as in *Green*, the accused was protected by the trial judge's ability to direct a verdict for insufficient evidence. *State v. Beck*, 167 W.Va. 830, 843–44, 286 S.E.2d 234, 242–43 (1982).

**7.** The section of the instruction concerning the jury's duty to scrutinize uncorroborated testimony was originally discussed in *State v. Perry*, 41 W.Va. 641, 24 S.E. 634 (1896), and recently readdressed in *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981).

In *Perry*, 41 W.Va. 641, 651–52, 24 S.E. 634, 638 (1896), this Court found that:

The trial judge denied the motion, but included an instruction on scrutinizing the testimony of the prosecutrix:

> However, the Court instructs the jury that if you believe from the evidence in this case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, E[ ...] M[ ...], then you should scrutinize her testimony with care and caution; although a conviction of a sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible. [7]

The accused contends that the uncorroborated, contradicted testimony of the victim was inherently incredible and therefore the trial judge erred when she denied his motion for acquittal. To establish inherent incredibility, the accused point to: the lack of physical evidence to confirm intercourse, the internal contradictions in the prosecutrix's out-of-court statements and testimony, the contradictory testimony between the prosecutrix and State's witness, M.B., and the extensive use of leading questions by the prosecutor during direct examination of the prosecutrix.

A basic premise in American law is that [T]he trial court, which has heard the testimony of witnesses firsthand, is not to weigh the credibility of witnesses

> In the trial of all felony cases, the jury should scrutinize the testimony of all contradicted and uncorroborated witnesses with care and caution. This instruction propounds a general principle of law, is unobjectionable, and should have been given, as it leaves the weight of the testimony entirely with the jury, and relates only to the proper discharge of the duty they owe to the accused and the state alike.

In *Payne*, this Court distinguished between contradicted and uncorroborated testimony. In *Payne*, a statutory rape case, the accused was prevented from testifying due to trial court error. He was the only witness able to contradict the uncorroborated testimony of the prosecutrix. (Although the prosecutrix had contradicted herself through prior statements). Therefore, this Court found the accused was entitled to the *Perry* instruction, even though the testimony was uncorroborated, yet uncontradicted by another witness.

when it judges the merits of a motion for acquittal. The prevailing rule has long been that a district judge is to submit a case to the jury if the evidence and inferences therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt. [citations omitted]

*Burks v. U.S.*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2150, 57 L.Ed.2nd 1, 13 [1978]. This is due to "[t]he Anglo–Saxon tradition of criminal justice, embodied in the United States Constitution ... [which] makes jurors the judges of credibility of testimony offered by witnesses. It is for them, generally, and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story." *U.S. v. Bailey*, 444 U.S. 394, 414–15, 100 S.Ct. 624, 636–37, 62 L.Ed.2d 575, 593 (1980).

◼ Inherent incredibility, therefore, is more than contradiction and lack of corroboration.[8] In *State v. Humphrey*, 177 W.Va. 264, 271, 351 S.E.2d 613, 619 (1986), we suggested that a determination of inherent incredibility, on a collateral matter, required a showing of "complete untrustworthiness", and cited several authorities.[9] The authorities, *Jackson v. U.S.*, 353 F.2d 862 (D.C.Cir.1965); *State v. Smith*, 592 F.Supp. 424 (E.D.Va.1984), *vacated on other grounds*, 780 F.2d 1102 (4th Cir.1985); *Coleman v. U.S.*, 515 A.2d 439 (D.C.App. 1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987) and F. Cleckley, *Handbook on Evidence* § 2.3(C) (2nd ed. 1986), all agree that when a trial court is asked to grant a motion for acquittal based on insufficient evidence due to inherently incredible testimony, it should do so only when the testimony defies physical laws.

◼ The trial judge did not err when she denied the accused's motion for acquittal and submitted the case, with an instruction to scrutinize with care and caution the prosecutrix's testimony, to the jury. First, the prosecutrix made prior inconsistent statements, and her testimony conflicted with that of the State's witness, M.B. The motivation for such inconsistencies was before the factfinder, and determining which was more credible was purely a jury question. Second, roughly 300 questions were asked by the prosecutor to the prosecutrix on direct examination. Of that number, counsel for the accused contends, roughly 46 were leading. The bulk of these leading questions concerned forcible compulsion, an element of second degree sexual assault for which the accused was acquitted. The prosecutrix was not lead when she testified that she and the accused engaged in intercourse. While credibility is jeopardized when leading questions are excessively used, given the area in which the questions were employed, we do not believe that the questions so tainted E.M.'s credibility as to remove its assessment from the jury.[10]

The truly difficult area concerns the lack of any physical evidence. Specimens of hair, blood and semen were not found on the prosecutrix, although she was examined within thirty hours of the alleged incident and had not washed. FBI agents confirmed that all evidence was properly gathered, collected and examined; however, they were unable to find any evidence to suggest that the prosecutrix had en-

---

8. *See* note 7, *supra*.

9. *Humphrey* concerned a trial judge's decision to exclude a witness' testimony because the trial judge found the witness, an alleged habitual liar, inherently incredible. One of the authorities cited in *Humphrey* for defining inherent incredibility was *U.S. v. Smith*, 592 F.Supp. 424 (E.D.Va.1984), *vacated on other grounds*, 780 F.2d 1102 (4th Cir.1985). In *Smith*, the court noted that in reviewing an inherent incredibility ruling on a collateral matter, such as in *Humphrey*, the standard of review is slightly less exacting than when dealing with a trial judge's ruling on the ultimate issue. *Smith*, 592

F.Supp. 424, 441, n. 23 (1984). In *Humphrey*, the Court did not discuss whether it adopted this analysis.

10. *Federal Rules of Evidence* 611(c), concerning leading questions, is substantially similar to *West Virginia Rules of Evidence* 611(c), which states, in pertinent part: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony."

The Federal Advisory Committee notes to subdivision (c) state: "An almost total unwillingness to reverse for infractions has been manifested by appellate courts. [citations omitted]"

gaged in intercourse with anyone on the date of the alleged encounter. The examining physician testified that when a female reports a history of having engaged in sexual intercourse within thirty hours of an examination, has not washed, and alleged her partner ejaculated, it is impossible for there to be a complete lack of physical evidence of intercourse. However, there was very little precision involved in the questioning of the prosecutrix concerning the incident, other than her description of engaging in intercourse with the accused. On cross-examining the doctor, the State pointed to this lack of specificity concerning the duration of intercourse, the degree of penetration, and whether and where ejaculation occurred. The doctor then admitted that under the statutory definition of intercourse as "penetration, however slight," the absence of tangible evidence was not physically impossible.[11] Based on this statement, the trial judge could find that the prosecutrix's testimony was not inherently incredible, as it did not defy the physical findings.

Recently, the Fourth Circuit was faced with a case of highly conflicting evidence, and noted that "[w]hile appellant's exhaustive argument on this subject advances many reasons why a jury could have, and, in appellant's view, should have found themselves not convinced beyond a reasonable doubt, that is not the question before this Court in reviewing the sufficiency of the evidence." All the necessary elements for the crime were established, therefore, the "[d]efendant's argument as to why the jury should be unconvinced is just what it appears, a jury argument." *U.S. v. Stevens*, 817 F.2d 254, 255 (4th Cir.1987). Similarly, as persuasive as the accused's argument appears, the prosecutrix testified, without the use of leading questions, that she, a fourteen-year-old, had intercourse with the accused, then 20. This evidence satisfies the elements of statutory rape. *See* note 1, *supra*. Her testimony, uncorroborated and highly contradicted, was not inherently incredible. Rather than interfere with the jury's role as the finder of fact, the trial judge could properly submit the case to the jury with a cautionary instruction concerning their duty to scrutinize uncorroborated testimony.

## II

The accused assigns two additional errors, which we will briefly address.

■ First, the accused, relying on *Burdette v. Lobban*, 174 W.Va. 120, 323 S.E.2d 601 (1984), contends the trial judge erred when, in her discretion, she denied the accused's motion to appoint a neutral psychologist for an evaluation of the prosecutrix's competency. Counsel for the accused alleges that the prosecutrix was either "not intelligent enough to tell truth from lie or she felt absolutely no duty to tell the truth."

The appellant misconstrues *Burdette*. In this case, the appellant did not contend, or offer any evidence to suggest that due to psychological problems or influences, the minor prosecutrix had a subliminal motive to falsely testify. This is the type of challenge the Court discussed in *Burdette, supra*. Instead, during an *in camera* hearing, the fourteen-year-old prosecutrix, was extensively examined by the trial judge. The prosecutrix stated she was in the sixth grade for the third year, knew the difference between truth and falsity, as well as the consequences of lying under oath. There was sufficient evidence to find her competent to testify. *State v. Jones*, 178 W.Va. 519, 362 S.E.2d 330 (1987). *Burdette* challenges to the competency of minors (psychological) are distinct from the traditional challenge to the competency of

---

11. At this juncture, the prosecutor posed several hypothetical questions to the examining physician concerning his opinion that, based on the lack of physical evidence, the prosecutrix did not engage in intercourse with anyone on the night of the alleged incident. Besides the legitimate questions concerning the broad statutory definition of penetration, the prosecutor also asked questions concerning vasectomies and condoms, neither of which were remotely intimated by the evidence. The prosecutor later incorporated these questions in her closing argument. We caution the use of such far-flung hypotheticals and arguments. *See State v. Critzer*, 167 W.Va. 655, 280 S.E.2d 288 (1981).

minors (recollection and ability to appreciate truth from falsity), which does not require a psychological profile. *See State v. Ayers*, 179 W.Va. 365, 369 S.E.2d 22 (W.Va. 1988) for a discussion of the two challenges to competency.

■ Second, the appellant contends that the trial judge erred when she failed to grant a mistrial based on prosecutorial misconduct during closing statements. Prior to closing statements, the trial judge instructed the jury. One of the instructions concerned the jury's inability to draw inferences from the defendant's failure to testify.

In rebuttal to defense counsel's argument concerning the lack of physical evidence, the prosecutor made the following statement:

It happened Friday night and by the time her mother found her the next day it was twenty-four hours had elapsed. Because there was no sperm present in the findings is not conclusive of anything.

It's true that I asked Dr. Mandac if it wasn't possible to have sexual intercourse and not find the evidence in the form of sperm if the male had had a vasectomy or if the male had not ejaculated. I don't know what happened there that night. *The only two people who really know what happened back in that bedroom are [E.M.] and Wayne.* But I gave Dr. Mandac the opportunity to show you that he didn't tell you the whole story and I had to put the examples into his mouth for him and then he would admit, 'Yes, that's true. Well, yeah, if he'd have had a vasectomy it wouldn't have happened. Well, yeah, if he'd worn a prophylactic that wouldn't have happened.' (emphasis added)

Defense counsel moved for a mistrial contending that the prosecutor had made a "thinly veiled" reference to the accused's failure to testify. Before the prosecutor could respond to the objection, the trial judge stated that she "did not receive that implication at all."

When the accused alleges that the prosecutor has obliquely referenced his silence, the reference must be one "that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Clark*, 170 W.Va. 224, 292 S.E.2d 643, 648 (1982).

The prosecutrix testified that she and the accused were in a room for "a long time." She further testified that they engaged in intercourse. No evidence of the length of time they engaged in intercourse, or any specific details about the incident were elicited. It was unclear whether, where, and after what period of time the accused ejaculated. These or any other specifics were not developed and therefore lead the examining physician to state that given the statutory definition of intercourse, he could not conclusively state that based on the lack of physical evidence the prosecutrix had not engaged in intercourse on the night of the incident.

The trial judge could properly find that the prosecutor's reference did not "naturally and necessarily" refer to the accused's failure to testify; but rather, referred to certain assumptions made by Dr. Mandac in rendering his opinion on direct examination that intercourse could not have occurred.

For the foregoing reasons, we affirm. Affirmed.