# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-1116** (Berkeley County 16-F-30)

**Edward H.,**
**Defendant Below, Petitioner**

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edward H.,[1] by counsel S. Andrew Arnold, appeals the Circuit Court of Berkeley County's August 25, 2017, order sentencing him to a cumulative sentence of 168 to 465 years of incarceration for his conviction of various crimes. Respondent State of West Virginia, by counsel Robert L. Hogan, filed a response. On appeal, petitioner contends that the circuit court erred in denying his motion for judgment of acquittal and sentencing him to an indeterminate sentence of 168 to 465 years, which was disproportionate to the crimes.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, petitioner was indicted on one count of first-degree sexual abuse, one count of first-degree sexual assault, five counts of incest, five counts of sexual abuse by a parent, six counts of second-degree sexual assault, two counts of third-degree sexual assault, two counts of domestic battery, and one count of child abuse causing bodily injury. Petitioner pled not guilty to all the charges against him.

On May 31, 2017, petitioner's jury trial commenced. The victim, petitioner's stepdaughter, testified that petitioner sexually abused her from the time she was ten years old until she was sixteen years old. She testified that the first instance of sexual contact occurred in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

2010 after she was disciplined by petitioner for jumping on a friend's trampoline. According to the victim, the sexual and physical abuse by petitioner occurred over 100 times until she reported the abuse in 2015. The victim clarified that the sexual abuse involved vaginal, anal, and oral sex. The incident that led to the victim's disclosure of the sexual abuse occurred on September 24, 2015, when the victim told petitioner that she was involved in a sexual relationship with the son of petitioner's friend. The victim testified that, later that night, petitioner physically assaulted her by slapping her in the head, knocking her to the ground, repeatedly punching her in the face, choking her, and punching her in the stomach. Petitioner's biological daughter, the victim's stepsister, testified that she heard petitioner physically assaulting the victim that same night. Petitioner's daughter testified that she observed part of the altercation and when she saw the victim, "her whole face was bruised." The victim explained that petitioner was upset because by engaging in a sexual relationship with someone else "in his eyes, I had cheated on him. And I know that's the way he saw it." Following the physical altercation, petitioner threatened to commit suicide, put a gun to his head, then put the gun in the victim's hand and asked her to pull the trigger. The victim then set the gun on the table, out of petitioner's reach. Petitioner sexually abused the victim at some point that night.

According to the victim, the next day, she accompanied petitioner to a construction site where he sexually abused her again. The victim further testified that after the abuse, she went to the restroom to clean herself up. However, two of petitioner's coworkers testified that the construction site did not have plumbing or running water. Conversely, the State presented evidence that the water company terminated service in February of 2016, months after the incident. According to the victim, her mother saw the bruising on her face the next day and ordered petitioner to leave the home and not to return. The victim's mother called the police and reported the physical abuse. Subsequently, petitioner was criminally charged with domestic battery, domestic assault, and child abuse related to the September 24, 2015, incident. In October of 2015, the victim disclosed to a friend, her boyfriend, and ultimately her mother, the allegations that petitioner had been sexually abusing her for the previous six years. The victim's mother reported the allegations to law enforcement. Thereafter, the victim underwent a forensic interview.

Also during the trial, petitioner's cousin testified that petitioner's relationship with the victim was "peculiar" because he seemed more involved with her than with his other two daughters. In regard to her behavior, the victim was described by witnesses as "closed off" and "timid" during the time period of the sexual abuse and the mother testified that the victim spent more time with petitioner than she did with her friends. The victim's mother testified that when the victim went through puberty, petitioner made inappropriate comments about her body. The victim's boyfriend also testified that petitioner made "sexually suggestive" comments about the victim. The boyfriend further testified that the victim suffered from night terrors and often feared that petitioner would come back to her home and harm her. During the trial, the victim's recorded forensic interview was viewed by the jury. Next, the forensic interviewer testified that she did not see any evidence of coaching or fabrication by the victim during the forensic interview. The forensic interviewer further explained that it was not uncommon for victims of sexual abuse to disclose the abuse after the offender is out of the home and the victim feels safe, as the victim in this matter did. Lastly, the forensic interviewer testified that the majority of sexual abuse cases do not have physical evidence. Ultimately, the jury returned a verdict of

guilty on all counts contained in the indictment. In its August 25, 2017, order, the circuit court sentenced petitioner to an "aggregate sentence of not less than 168 years nor more than to 465 years in the penitentiary." It is from this order that petitioner appeals.

This Court applies a de novo standard of review to appeals from rulings on a motion for judgment of acquittal:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996).

On appeal, petitioner argues that his convictions for the sexual offenses, counts one through twenty, were erroneously based solely upon the victim's uncorroborated testimony. Petitioner states that there was no physical evidence and claims that the victim's testimony lacked specific details, such as specific dates of the offenses. Further, petitioner contends that the victim's testimony regarding the sexual assault at the construction site was incredible because she claimed to have gone to the restroom in the building, but according to witnesses, there was no running water at the site. Petitioner argues that these deficiencies in the victim's testimony rendered her testimony incredible, therefore leaving no rational jury able to find him guilty beyond a reasonable doubt.

Regarding our review of a claim alleging insufficiency of the evidence, this Court has held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record

3

contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, *id*. We have also held that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syl. Pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). To establish inherent incredibility, one must show "more than contradiction and lack of corroboration." *State v. McPherson*, 179 W.Va. 612, 617, 371 S.E.2d 333, 338 (1988). Rather, establishing inherent incredibility "require[s] a showing of 'complete untrustworthiness[.]'" *Id.* (citation omitted). Further, "when a trial court is asked to grant a motion for acquittal based on insufficient evidence due to inherently incredible testimony, it should do so only when the testimony defies physical laws." *Id.* (citations omitted).

Petitioner's argument is without merit. As set forth above, sexual offense convictions may be obtained on the victim's uncorroborated testimony. Petitioner argues that the victim's testimony lacked details regarding specific dates of the offenses, however, we have noted that, "[b]ecause time is not an element of the crime of sexual assault, the alleged variances concerning when the assaults occurred did not alter the substance of the charges against the defendant." *State v. Miller*, 195 W.Va. 656, 663, 466 S.E.2d 507, 514 (1995). The victim was consistent in her testimony regarding when, generally, and where the offenses occurred. The fact that her accounts lacked certain details and specific dates does not render her testimony inherently incredible. Rather, it was for the jury to assess and properly weigh the victim's testimony. The jury heard the victim's direct testimony regarding the sexual offenses, and she was cross-examined on the issue. The jury proceeded to weigh her testimony and judge its credibility. Ultimately, the jury believed her. "On review, we will not weigh evidence or determine credibility. Credibility determinations are for a jury and not an appellate court." *Guthrie*, 194 W.Va. at 669, 461 S.E.2d at 175.

Petitioner also argues that the victim's disclosure was a fabrication to get rid of petitioner in order to be able to freely date her boyfriend. However, again, the victim's credibility was determined by the jury and they found her testimony regarding years of sexual abuse by petitioner to be credible. Additionally, petitioner argues that the victim's testimony was incredible because she testified that after a particular incident of sexual abuse at petitioner's construction site, she claimed to have used the bathroom to clean herself up, but petitioner's witnesses testified at trial that the construction site did not have running water. However, the State presented evidence that the water company provided service to the site during the time of the abuse. Moreover, we find that the alleged contradiction between whether there was running water on petitioner's construction site is insufficient to establish that the victim's testimony was inherently incredible. While petitioner also argues that there was no evidence that the victim's behavior during her early teenage years indicated that she was victimized by petitioner, the record shows that multiple witnesses testified that petitioner threatened the victim and that the victim was "timid" and "closed off" during the years that the sexual offenses occurred. Accordingly, we find that the court did not err in denying petitioner's motion for judgment of acquittal for a lack of sufficient evidence.

Petitioner next argues that his sentence of 168 to 465 years was disproportionate to the offenses.[2] However, he "concedes that his sentences were within statutory limits and not based upon an impermissible factor." As such, we decline to undertake a proportionality analysis in this matter. *See* Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982) ("Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."). Further, petitioner fails to provide any argument in support of his assertion that his sentence is disproportionate given the nature of the offenses, legislative purpose behind the punishment, and provides no evidence regarding a comparison of punishment from other jurisdictions. Accordingly, we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 25, 2017, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**:  January 14, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[2]In support, petitioner relies on *State v. David D.W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003), wherein this Court remanded the matter to circuit court for resentencing after it found the sentence of 1,140 years to 2,660 years of incarceration for sexual crimes to be offensive and shocking to the conscience. However, petitioner's reliance on *David D.W.* is misplaced because the sentence in *David D.W.* was substantially greater than in the instant matter and because this Court later noted in *State v. Slater* that *David D.W.* was a "per curiam opinion in which established law was disregarded in order to find a sentence within statutory limits was unconstitutional." 222 W.Va. 499, 508 n.11, 665 S.E.2d 674, 683 n.11 (2008).