FILED
April 20, 2022

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 21-0040 (**Berkeley County CC-02-2019-F-63)

**N.D.,**
**Defendant Below, Petitioner**


# MEMORANDUM DECISION


Petitioner N.D., by counsel Michael Santa Barbara, appeals the Circuit Court of Berkeley County's sentencing order and the denial of his motion for a new trial.[1] Respondent the State of West Virginia, by counsel Patrick Morrisey and Lara K. Bissett, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, petitioner was indicted on three counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust; three counts of incest; and three counts of sexual assault in the third degree. The victim, K.C., is petitioner's minor stepdaughter and niece. Petitioner entered into a plea agreement whereby he agreed to enter an *Alford* plea to one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust and two counts of sexual assault in the third degree. However, when the plea agreement was placed on the record at a pretrial hearing, petitioner rejected the plea. Therefore, the case proceeded to trial on October 21, 2020.

During the trial, Trooper First Class (TFC) Matthew Morgan testified that he received a call on May 22, 2018, regarding an alleged sexual assault that occurred in Berkeley County. TFC

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Morgan testified that the sexual assault involved a thirteen-year-old victim, K.C., who has a medical condition such that her mental capacity was that of an eight-year-old. TFC Morgan testified that when he arrived, K.C. was present with her mother, E.B. TFC Morgan was informed that K.C. had confided in a neighbor that petitioner had been having sex with her. He was also told that when E.B. confronted petitioner, petitioner admitted that the accusations were true. TFC Morgan also testified regarding his forensic interview of K.C., during which she disclosed that she had been sexually abused by petitioner over a period of several months. As a result, petitioner was arrested. According to TFC Morgan, during his investigation he discovered that, while incarcerated, petitioner made recorded calls to K.C. and/or E.B. so he obtained a phone log and a CDR disk of those calls. Petitioner's counsel objected to TFC Morgan's testimony, asserting that he was not a competent witness to authenticate the calls and that a jail records custodian was needed to authenticate them, in addition to time and date stamping them. The State, however, argued that the West Virginia Rules of Evidence do not specify who must authenticate those records and that the times and dates were noted on the CD. The circuit court overruled petitioner's objection, and the recorded calls were played for the jury, though they were not transcribed in the trial transcript.

E.B. testified that petitioner is her ex-husband. She also explained that, prior to marrying petitioner, she had been married to his half-brother, who is K.C.'s biological father. E.B. further testified that on May 22, 2018, a neighbor told her that K.C. had disclosed petitioner's sexual abuse to the neighbor, after which E.B. confronted petitioner. According to E.B., petitioner then turned to K.C. and instructed her to "[t]ell [her] mom the truth." After E.B. informed petitioner that she was asking him—not K.C.—he responded, "She came on to me. . . . Yes, I did it." He then apologized. At the time petitioner sexually assaulted K.C., E.B. was working from approximately 7:00 p.m. to 7:00 a.m. E.B. further testified that when petitioner called her from jail, he

> kept saying that he was sorry, that he was going to make it right, that he was going to take responsibility for what he did wrong, said that [K.C.] had come into his room and felt up on him, just a repeat of saying he was sorry and that he was going to take responsibility for it.

According to E.B.'s testimony, she took "I did it" to mean that he had sex with K.C. She also testified that K.C. was "very, very upset" and scared. K.C. "disclosed that she was scared to tell [her] because she thought she was going to get in trouble."

K.C. testified that petitioner put his "pee-pee" in her "pee-pee" in her mother's bedroom while her mother was away at work; she testified that it happened multiple times in her mother's bedroom and twice in her own bedroom. K.C. further testified that petitioner also stuck his "pee-pee" in her "bottom." She stated that he put "white stuff" from a bottle that he kept in his drawer on his "pee-pee" when he had sex with her. This was consistent with testimony from TFC Morgan and E.B. that they found a bottle of lubricant in petitioner's dresser drawer. K.C. also identified a photograph of a bottle of lubricant as looking like the bottle petitioner used when petitioner had sex with her. K.C. testified that her last sexual contact with petitioner was the night before she told her neighbor what was happening and that petitioner told her not to tell anyone or she would go to jail. On cross-examination, when petitioner's counsel asked her whether her mother told her what to say in court, she replied, "Yes." However, on re-direct, the State inquired, "Did she tell you

2

anything, how to answer my questions or what questions I am going to ask you or how to answer them or anything like that?" K.C. responded, "She said tell the truth."

At the conclusion of the State's case-in-chief, petitioner's counsel moved for a judgment of acquittal, arguing that the State failed to prove its case as to the number of times petitioner sexually assaulted K.C. and the dates upon which the assaults occurred. However, the circuit court denied the motion.

Petitioner was the sole defense witness during trial. According to petitioner's testimony, K.C. said, "Dad, you tried to stick your thing in me" and he "was like, 'Wow, really.'" With regard to the recorded calls from jail, he testified that he "basically said that I did stuff and I was trying to get money [for the commissary]." He admitted he knew that the calls were being recorded but that he "sat there and said what [he] said." At trial, he claimed he "shouldn't have said it because hindsight now I see I made a mistake in doing so, but I wasn't going to lay down that's why I'm here now." When asked to tell the jury anything he would like them to know about the allegations against him, petitioner told them that "jail was very hard . . . The conditions in there . . . are bad. I got itchy like sores in my head and everything. I was willing to do whatever it took to get the things I needed." He did not, however, deny the allegations. On cross-examination, he stated, "I am not even saying [K.C.] is lying, but I am saying she's confused right now." His counsel did not call any other witnesses.

At the conclusion of the trial, the jury found petitioner guilty of all nine counts. Thereafter, petitioner's counsel filed a motion for a new trial, arguing that he could not be convicted based upon the uncorroborated testimony of K.C. and that the recorded calls were not properly authenticated. Prior to the sentencing hearing, the circuit court denied that motion.

During the November 20, 2020, sentencing hearing, E.B. addressed the circuit court. Petitioner requested concurrent sentencing due to his age (fifty-six) and to allow for rehabilitation at the conclusion of his sentence. Petitioner did not exercise his right of allocution. The State argued that due to petitioner's relationship to the victim and the heinousness of the crime, he should receive consecutive sentences. According to the presentence investigation report, petitioner had a history of violence with thirty misdemeanor arrests and numerous convictions. The circuit court noted that it "carefully considered the arguments of counsel, the testimony and exhibits adduced at trial, the sentencing statement made by the minor victim's mother, the impact of the sexual crimes on the child victim, and the [presentence investigation]," finding that the sentences would run consecutively. "The [c]ourt notes that [petitioner] was a stepfather, uncle, and caregiver to a 13 year old special needs child; his sexual abuse of this innocent child is beyond appalling; and there is no basis for leniency in sentencing." By order entered on December 17, 2020, petitioner was sentenced to 48 to 120 years of incarceration. Upon release, petitioner was ordered to be placed on supervised release for fifty years and to register as a sexual offender for the remainder of his life. Petitioner appeals from the denial of his motion for a new trial and his sentencing order.

We review the denial of a motion for a new trial as follows:

In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the

circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000).

On appeal, petitioner first argues that he was unfairly prejudiced by the admission of the recorded jailhouse calls in that the State failed to provide sufficient evidence to properly authenticate the calls. Therefore, the jury's verdict rested upon the improperly admitted evidence and should be reversed. Here, TFC Morgan determined there were recordings of three calls from petitioner at the Eastern Regional Jail to E.B. and/or K.C. When attempting to authenticate the calls, he testified that he "first received a log of the telephone calls and then approximately a week later received a CDR containing those telephone calls." He testified that he listened to the calls and recognized the voices of both petitioner and E.B. During the trial, when the State marked the CDR for identification, petitioner's trial counsel asked for a sidebar and objected, asserting that TFC Morgan was not a competent witness to authenticate the calls. At that point, the court inquired whether the calls were dated and time stamped on the CD, and the officer testified that they were. The court then overruled petitioner's objection. According to petitioner, TFC Morgan could identify the voices but there was no inquiry as to whether the recorded calls were as they occurred. Without citing law requiring that such testimony be provided, petitioner criticizes the absence of testimony from a jail employee regarding the recordings. Without citing law, petitioner argues that the admission of this important evidence without the proper authentication constituted an abuse of discretion on the part of the court and unfairly prejudiced petitioner.

We have previously held that "'a trial judge's ruling on authenticity will not be disturbed on appeal unless there has been an abuse of discretion.' *State v. Jenkins*, 195 W.Va. 620, 625, 466 S.E.2d 471, 476 (1995)." *State ex rel. Smith v. McBride*, 224 W. Va. 196, 204, 681 S.E.2d 81, 89 (2009). West Virginia Rule of Evidence 901(a) provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Further, this Court has recognized as follows:

It has been explained that "authentication requires nothing more than proof that a document or thing is what it purports to be." 2 Louis J. Palmer, Jr., et al., *Handbook on Evidence for West Virginia Lawyers*, § 901.02, at 429 (6th ed. 2015). Furthermore, "'the standard of admissibility under Rule 901(a) is rather slight, *i.e.*, is the evidence sufficient "to support a finding" that the object is authentic.' " *State v. Boyd*, 238 W. Va. 420, 443, 796 S.E.2d 207, 230 (2017) (quoting 2 Palmer, et al., *Handbook on Evidence*, § 901.03, at 431).

*Hasan v. W. Va. Bd. of Med.*, 242 W. Va. 283, 295, 835 S.E.2d 147, 159 (2019).

In the instant case, TFC Morgan testified that E.B. informed him that petitioner had called her home from jail, after which TFC Morgan requested copies of those recorded calls. TFC Morgan received a call log and a CDR disk of the recorded calls, which he listened to, recognizing the

voices of both petitioner and E.B. He also testified that the recordings were date and time stamped. While petitioner's trial counsel objected, arguing that only a records custodian from the jail could testify as to how the calls were recorded or whether they were altered, the circuit court exercised its discretion to overrule the objection and allow the calls to be played for the jury.

While petitioner argues that he was unfairly prejudiced by the court's ruling, he fails to specify how he was prejudiced so he has not sustained his burden. *See* Syl. Pt. 12, *State v. Hargus*, 232 W. Va. 735, 753 S.E.2d 893 (2013) (quoting Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966)). Moreover, as this Court has found,

> "[w]here improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus point 2, *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979).

Syl. Pt. 6, *State v. Baker*, 230 W. Va. 407, 738 S.E.2d 909 (2013). The State contends that, even absent the recorded calls, the remaining evidence was sufficient to support petitioner's conviction. We agree. In addition to the fact that the officer had more than sufficient reason to believe that petitioner and E.B. spoke on the phone and that those calls were recorded because petitioner was in jail, he informed the jury that he obtained the call log and was able to identify petitioner's voice on the recordings. There was far more evidence introduced to the jury that supported petitioner's convictions. Thus, we find, under the facts of this case, that the circuit court did not abuse its discretion in admitting the recorded calls at issue and allowing TFC Morgan to testify regarding those recordings.

Petitioner next argues that the evidence provided by K.C. was wholly uncorroborated and was insufficient to demonstrate, beyond a reasonable doubt, petitioner's guilt for the crimes with which he was charged. He contends that there was no physical evidence collected from K.C.'s underwear or from the forensic examination that corroborated the events described by K.C. Petitioner argues that it "defies credibility to believe that a grown man could sexually assault a young girl, and that there would be no physical signs to be found by a nurse, trained to do forensic sex assault examinations only hours later." In addition, when asked whether she had been coached, K.C. admitted that her mother had told her what to say. He argues that because K.C.'s testimony is uncorroborated by any witness testimony or physical evidence it is inherently incredible. *State v. McPherson*, 179 W. Va. 612, 617, 371 S.E.2d 333, 338 (1988). He contends, therefore, that his convictions for the multiple sexual acts should be reversed.

At the outset, we note that in addressing challenges to the sufficiency of the evidence to support a conviction, we have found as follows:

> The function of an appellate court when reviewing the sufficiency of the

5

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

....

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. . . .

Syl. Pts. 1 and 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further, as we have held, "[t]he jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses." Syl. Pt. 2, *State v. Martin*, 224 W. Va. 577, 687 S.E.2d 360 (2009) (citation omitted).

Although petitioner points to the child's testimony indicating that her mother had told her what to say while testifying, petitioner ignores her clarification on re-direct that what her mother actually told her was to tell the truth while testifying. Further, there was corroboration of K.C.'s testimony, as she testified that petitioner used a lubricant when he had sex with her, and E.B. testified that she found a bottle of lubricant in petitioner's dresser drawer, which was pictured in a photograph entered into evidence at trial. In addition, petitioner never denied that he sexually assaulted K.C. We, therefore, find that petitioner has failed to satisfy his heavy burden necessary to establish, when viewing the evidence in the light most favorable to the prosecution, that the jury could not have found the essential elements of the crimes proved beyond a reasonable doubt. Moreover, we decline to disturb the jury's credibility determination.

Finally, petitioner asserts that the circuit court abused its discretion in sentencing petitioner to an effective life sentence without the possibility of parole. Petitioner argues that his excessive sentence violates his constitutional rights so it must be reversed. Per petitioner, in imposing his sentence, the circuit court was "demonstrably angry at petitioner." According to petitioner, it is clear that the court was swayed by "personally held anger and invective in sentencing [p]etitioner." Petitioner asserts that because he was 56 at the time of sentencing, 48 to 120 years is, effectively, a life sentence without the possibility of parole.

As this Court has previously held,

"The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syllabus Point 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

"Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

Syl. Pts. 8 and 9, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019). Each of petitioner's convictions for sexual abuse by a parent, guardian, custodian, or person in a position of trust carries a sentence of ten to twenty years of incarceration; each incest conviction carries a sentence of five to fifteen years; and each conviction for sexual assault in the third degree carries a sentence of one to five years in prison. As this Court has repeatedly found, it is within the circuit court's sound discretion to order that sentences be run consecutively. Syl. Pt. 3, *State v. Allen*, 208 W. Va. 144, 539 S.E.2d 87 (1999); Syl. Pt. 7, *State ex rel. Farmer v. McBride*, 224 W. Va. 469, 686 S.E.2d 609 (2009); Syl. Pt. 4, *State v. Marcum*, 238 W. Va. 26, 792 S.E.2d 37 (2016). As the circuit court set forth, it considered petitioner's criminal history of thirty "misdemeanor [convictions,] most of them involving some type of harm to another person." It also considered petitioner's statements made during the presentence investigation and the relationship to and vulnerability of K.C. For these reasons, we find that the circuit court did not abuse its discretion in imposing petitioner's sentence that is within statutory limits.

Affirmed.

**ISSUED:** April 20, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment

7