**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* S.S.

**No. 22-0164** (Tucker County 20-JD-7)


**MEMORANDUM DECISION**


Petitioner S.S. appeals the July 7, 2021, order of the Circuit Court of Tucker County adjudicating him as a juvenile delinquent.[1,2] Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In 2020, the State filed a petition in the circuit court alleging that petitioner was a juvenile delinquent for having sexually assaulted his two minor cousins, C.R. and P.R., in violation of West Virginia Code § 61-8B-4 in April 2018.[3] At the time the petition alleged the assaults occurred, petitioner was eleven years old, C.R. was seven years old, and P.R. was nine years old.

The circuit court held a contested adjudicatory hearing in July 2021. C.R., P.R., petitioner, and petitioner's father testified at the hearing. C.R. testified that petitioner "raped" him by "injecti[ng]" C.R's "butt" with his penis. C.R. claimed this occurred more than a hundred times when C.R. was "[l]ike, three, four, five, six, seven, eight" years old. C.R. further claimed that the intrusions occurred in a home and at two different farms and that he tried to stop petitioner from

---

[1] Petitioner appears by counsel J. Brent Easton. Respondent the State of West Virginia appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lara K. Bissett.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] West Virginia Code § 61-8B-4 provides, in relevant part:

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion[.]

1

assaulting him but that petitioner was too strong and "weighed a lot more." C.R. testified that he saw petitioner assault P.R., his sister, in a barn.

On cross examination, C.R. was asked if he remembered doing interviews at a Child Advocacy Center ("CAC"), which C.R. denied; however, when asked about specific topics discussed during the interviews, C.R. was able to recall certain discussions that occurred during the interviews. For instance, during an interview in 2019, C.R. mentioned another teenager, a neighbor, whom he claimed was "a kid that raped" him. He further testified that the neighbor "did basically the same thing [petitioner] did -- injection." C.R. admitted that when he told the sheriff and his aunt about the neighbor, he did not mention petitioner.

P.R. also testified that petitioner "raped" her by "physically touch[ing]" her "vagina" with "[h]is weiner" when she was about seven years old. She claimed she was assaulted multiple times at her grandmother's house and at a farm. P.R. testified that, on one occasion, she was in a barn "on a hay bale" and that petitioner "was putting it in my butt." She testified that she tried to stop the assaults but that petitioner was very tall. She further testified that she was afraid to tell any adults about the assaults, stating, "I was afraid[] because down at my Grandma's, he had -- I don't remember what kind of gun, but he had a gun, and he shot it up in the air, and it killed a bird."

On cross examination, petitioner's counsel asked P.R. about an interview at the CAC, during which P.R. was asked, "Why tell now?" Petitioner's counsel questioned P.R. as follows:

> Q.        . . . And do you remember you stated, "I want to get away from here. I don't want this same family. I don't want to be here because of my dad and everyone in this town. I used to get bullied at school. Everybody knows about what happened with mom and dad."
>
> . . . .
>
> A.        I wouldn't -- well -- I know I said that I didn't want to be here and, yes, I did want a new family and everything, 'cause I was very upset because everybody would always bully me. . . .
>
> Q.        Okay. And do you remember towards the end of the interview that the interviewer asked you, "What did [your aunt] tell you about coming here today?" And your answer, verbatim, was, "Spill the beans, girl. If you want freedom, this is the chance."
>
> A.        Yeah.

Petitioner testified on his own behalf, denying the victims' allegations against him. Petitioner's father also testified on petitioner's behalf. According to petitioner's father, at the time the petition alleged the assaults occurred, petitioner was undersized, weighing "about 45 pounds or less" and standing "around 40 inches tall." Petitioner introduced two photographs into evidence which petitioner's father testified showed petitioner's size at the time the petition alleged the assaults occurred.

After the parties presented their evidence, petitioner's counsel asked that the case against petitioner be dismissed due to the inconsistencies in and unbelievability of the victims' testimony. The circuit court said:

> Okay. Well, unfortunately, in this type of situation, a ton of damage gets done either way. Either we've got him falsely convicted and all that, or we've got them molested. One way or the other, I don't know.
>
> But after prosecuting cases like these for 20 years and sitting up here on the bench for 12, things that happen to kids when they're five, six, seven years old, they don't tend to make them up.
>
> And I disagree with you, I thought actually [C.R.] and [P.R.], for as young as they were when it happened and all that, were very good witnesses.
>
> So I find him guilty beyond a reasonable doubt . . . .

The circuit court entered an adjudicatory order on July 7, 2021, stating:

> After giving all parties the opportunity to present evidence and argument, the **COURT FINDS and CONCLUDES** as follows:
>
> 1.    That the State met the burden of proof and that C.R. and P.R. were convincing witnesses.
>
> Upon the findings of fact and conclusions of law set forth above, this Court does hereby **ADJUDGE** and **ORDER** the above-named Juvenile Respondent is a Juvenile delinquent.

On January 31, 2022, the circuit court entered a disposition order, directing that petitioner "serve a term of probation for two (2) years, beginning January 21, 2022, and ending January 20, 2024. . . . After successfully serving one (1) year of the probation period, the probation officer, in his discretion, may petition the [c]ourt to terminate [petitioner's] probation." An appeal to this Court followed.

Petitioner asserts one assignment of error on appeal, arguing that the circuit court's adjudicatory order should be reversed and remanded because the evidence was insufficient to support the circuit court's adjudication of petitioner as a juvenile delinquent. Petitioner's only challenge is to the victims' testimony. Regarding C.R., petitioner argues that C.R.'s claim as to when the assault occurred—when C.R. was "three, four, five, six, seven, eight" years old—is "wholly inconsistent with the time frames the combined victims' testimony seemingly established and the petition alleged." Petitioner observes that while C.R. could not recall when he was assaulted or the CAC interview, he was able to recall sexual abuse by a neighbor during the relevant time. Petitioner also observes that C.R. reported the abuse by the neighbor but not the abuse by petitioner. Petitioner alleges that P.R.'s testimony lacked credibility because she

3

described petitioner as "very tall" when the assaults occurred, because her account of petitioner shooting a bird was "bizarre," and because of the motives she mentioned during her CAC interview.

We have previously recognized that "an adjudication of delinquency is subject to the same standards of review on appeal as is a criminal conviction." *State v. Eddie Tosh K.*, 194 W. Va. 354, 358, 460 S.E.2d 489, 493 (1995). When we review a criminal conviction wherein the alleged error involves the sufficiency of the evidence, we "view[] the evidence in the light most favorable to the prosecution" to determine whether "any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Accordingly, in this juvenile delinquency action, we apply this same standard. *See* W. Va. R. Juvenile P. 32(a) ("The burden is on the State to prove the allegations in the petition beyond a reasonable doubt before an adjudication can be made that a juvenile committed a delinquent offense."); *accord* W. Va. Code § 49-4-711(3) (specifying procedures in juvenile delinquency cases).

Petitioner attacks the credibility of P.R. and C.R. In conducting our review, we are mindful that petitioner takes on a heavy burden. We "must credit all inferences and credibility assessments that the [trier of fact] might have drawn in favor of the prosecution." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. "Credibility determinations are for a [trier of fact] and not an appellate court." *Id.*; *see also Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Regarding sex offense cases, we have held that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the [trier of fact]." Syl. Pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981). We have explained that inherent incredibility "is more than contradiction and lack of corroboration." *State v. McPherson*, 179 W. Va. 612, 617, 371 S.E.2d 333, 338 (1988). To be inherently incredible, the testimony must "def[y] physical laws." *Id.*

As noted above, the State alleged that petitioner violated West Virginia Code § 61-8B-4, which sets forth the felony offense of second-degree sexual assault. Petitioner presents no argument that the State failed to meet its burden as to any specific element. Instead, petitioner argues generally that the offenses could not be proved because the victims' testimony could not be believed. Consequently, we limit our review to determining whether the circuit court erred in concluding that the victims' testimony was credible.

We find no error in the circuit court's determination that the victims' testimony was credible. Admittedly, C.R. appeared to be confused about multiple issues, such as how old he was when he was assaulted and whether he was interviewed by the CAC; however, the circuit court may have reasonably attributed the confusion to C.R.'s tender age—C.R. was ten years old during the adjudicatory hearing and seven years old at the time the petition alleged he was assaulted. In making its determination as to the credibility of the victims' allegations, the circuit court was able to examine the victims' demeanor as they testified. The victims were able to generally describe when, where, and how they were molested; they claimed petitioner molested them without their

consent by force; and they even corroborated portions of each other's testimony. While petitioner may find the testimony to have been "bizarre" or unbelievable because it conflicted with the testimony of his own witnesses, this is not enough, under *McPherson*, to find that the testimony was inherently incredible. Pursuant to *Guthrie* and *Beck*, we must defer to the circuit court's credibility determination. We conclude that, when viewed in a light most favorable to the State, any rational trier of fact could have found that the victims' testimony was credible and that, based on that testimony, petitioner committed the second-degree sexual assault of the victims beyond a reasonable doubt. Therefore, we find no error in the circuit court's adjudication of petitioner as a juvenile delinquent.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 15, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn