IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

SEPTEMBER 2019 TERM

_____

No. 18-0349

_____

FILED

**October 18, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Respondent

V.

BENNY W.,
Petitioner

_____

Appeal from the Circuit Court of Ritchie County
Honorable Timothy L. Sweeney, Judge
Criminal Action No. 17-F-8

AFFIRMED

_____

Submitted:  October 1, 2019
Filed:  October 18, 2019

Kyle G. Lusk, Esq.                     Patrick Morrisey, Esq.
Matthew A. Bradford, Esq.              Attorney General
Brandon L. Gray, Esq.                  Scott E. Johnson, II, Esq.
Lusk & Bradford, PLLC                  Assistant Attorney General
Beckley, West Virginia                 Charleston, West Virginia
Attorneys for Petitioner               Attorneys for Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "A trial court's ruling on authenticity of evidence under Rule 901(a) of the West Virginia Rules of Evidence will not be disturbed on appeal unless there has been an abuse of discretion."  Syllabus point 12, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2017).

2.    Under Rule 901(a) of the West Virginia Rules of Evidence, social media text messages may be authenticated in numerous ways including, for example, by a witness who was a party to sending or receiving the text messages, or through circumstantial evidence showing distinctive characteristics that link the sender to the text messages.

3.    "A conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury."  Syllabus point 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981).

4.      "Only when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law." Syllabus point 8, *State v. Smith*, 178 W. Va. 104, 358 S.E.2d 188 (1987).

5.      In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

6.      "A trial court's failure to remove a biased juror from a jury panel, as required by W. Va. Code § 62–3–3 (1949) (Repl.Vol.2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice.  The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled."  Syllabus point 3, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013).

7.     Under Rule 404(a)(2)(A), of the West Virginia Rules of Evidence, a defendant in a criminal prosecution may offer evidence of the defendant's pertinent character trait.

8.     Under Rule 404(a)(2)(A), of the West Virginia Rules of Evidence, "honesty" is not a pertinent character trait of a criminal defendant who is being prosecuted on a sexual offense charge.

9.     "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syllabus point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982).

**HUTCHISON, JUSTICE**:

This appeal was brought by Benny W. (hereinafter "Petitioner") from the April 4, 2018, order of the Circuit Court of Ritchie County sentencing him to a total of 131 to 295 years in prison.[1] Petitioner was convicted by a jury of six counts of sexual assault in the second degree, seven counts of sexual abuse by a custodian, and one count of sexual abuse in the first degree. In this appeal, Petitioner set out nine of assignments of error and asks this Court to reverse his convictions and sentences and award him a new trial. Upon careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we affirm.

# I.
## FACTUAL AND PROCEDURAL HISTORY

This case involves the sexual assault of two female juveniles, H.A. and J.L., by the Petitioner.[2] H.A. and J.L. were friends with Petitioner's juvenile daughter, A.W. During the period of June to July of 2016, H.A. alleged that she was sexually assaulted by the Petitioner on five occasions while she was at his home visiting A.W., J.L. alleged that she was sexually assaulted by the Petitioner on one occasion during the same time period.

---

[1] Consistent with our long-standing practice in cases involving juveniles and sensitive facts, we use the initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 256 n.1, 773 S.E.2d 20, 22 n.1 (2015).

[2] H.A. was born in 2002, and J.L. was born in 2003.

1

The first time that Petitioner sexually assaulted H.A. at his home, A.W. approached H.A. and informed her that Petitioner wanted to have sex with her.[3] According to H.A., A.W. took her into Petitioner's bedroom, which was dark, and left her there.[4] Petitioner, who apparently was already in the bedroom, took off H.A.'s pants and penetrated her vagina with his hand and penis.[5] H.A. visited A.W. on four more occasions and during each visit the Petitioner sexually assaulted her. When the third sexual assault of H.A. took place, J.L. was also visiting the home. H.A. alleged that during this visit A.W. told her and J.L. that the Petitioner wanted to see them. A.W. escorted both girls into Petitioner's bedroom and left. Both girls got on Petitioner's bed and he sexually assaulted them. J.L. was sexually assaulted first. The Petitioner penetrated J.L.'s vagina with his fingers. J.L. left the room after being sexually assaulted in that manner. After J.L. left the room, Petitioner sexually assaulted H.A. by penetrating her with his penis.

In the fall of 2016, H.A. reported to a high school counselor that she was sexually assaulted multiple times by Petitioner. The high school counselor reported the incident to the county prosecutor. A police investigation followed, during which it was

---

[3] It appears that the Petitioner was in his bedroom when he sent a text message to A.W. making the request to have sex with H.A.

[4] The record indicates that the Petitioner had been married to A.W.'s mother. It is not clear if the couple divorced or separated. The record does indicate that A.W.'s mother was not living with Petitioner.

[5] Petitioner put on a condom.

learned that the Petitioner also sexually assaulted J.L. Subsequent to the investigation, a grand jury returned a twenty-four count indictment against the Petitioner on January 23, 2017.

The case was tried before a jury over two days, beginning on December 4, 2017. During the trial the State presented testimony from the victims, H.A. and J.L.[6] Both victims testified to being sexually assaulted by the Petitioner. The State also called the Petitioner's daughter, A.W. During the trial A.W. testified that on two occasions she told H.A. that Petitioner wanted to have sex with her. A.W. also identified Facebook text messages she had with Petitioner, in which Petitioner appears to be asking her to tell H.A. or J.L. to come over to have sex with him. At the close of the State's case-in-chief the circuit court granted a motion by Petitioner to dismiss two of the counts on insufficient evidence. The Petitioner testified during his case-in-chief and denied having any sexual contact with the victims.[7] The jury ultimately found the Petitioner guilty of fourteen counts of the indictment and not guilty of eight counts.[8] This appeal followed.

---

[6] The State called a total of seven witnesses.

[7] The Petitioner also called six character witnesses.

[8] Additional relevant facts about the trial of the case are brought out under specific assignments of error.

## II.
## STANDARD OF REVIEW

The Petitioner has set out nine assignments of error that have different review standards. Consequently, we will set out the standard of review for each issue as it is addressed below. *See State v. Boyd*, 238 W. Va. 420, 428, 796 S.E.2d 207, 215 (2017) ("We will dispense with our usual standard of review section because each of the assignments of error has its own review criteria."); *State v. Dunn*, 237 W. Va. 155, 158, 786 S.E.2d 174, 177 (2016) ("Therefore, we dispense with setting out a general standard of review. Specific standards of review will be discussed separately as we address each assignment of error.").

## III.
## DISCUSSION
## A.
## Authentication of Facebook Messenger Text Messages

The first two assignments of error by the Petitioner are overlapping, insofar as they both require this Court to determine whether the circuit court committed error in finding the State properly authenticated its only exhibit, Facebook Messenger text messages. Consequently, we will combine the two assignments of error and address the

issues raised together.[9] The State contends that the text messages exhibit was authenticated by A.W. and properly admitted into evidence.[10]

We have held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994). With respect to a trial court's ruling on authentication of evidence, this Court has held that "[a] trial court's ruling on authenticity of evidence under Rule 901(a) of the West Virginia Rules of Evidence will not be disturbed

---

[9] In the first assignment of error the Petitioner couches the issue of the text messages in the context of the circuit court committing error by "provisionally and conditionally" rejecting his objection to the admission of the text messages. *See* Syl. pt. 4, *State v. Nixon*, 178 W. Va. 338, 359 S.E.2d 566 (1987) ("The trial court may conditionally admit [evidence] subject to the laying of a proper foundation."). In the second assignment of error the Petitioner asks this Court to address the authentication of the text messages under plain error, in order to impose the procedures set out in a 2016 Memorandum Decision by this Court. (The decision is discussed *infra*.)

[10] The Petitioner's brief makes reference to the text messages being double hearsay and should not have been admitted for that reason. *See State v. Golden*, 175 W. Va. 551, 554, 336 S.E.2d 198, 202 (1985) ("The general rule is that multiple hearsay evidence is admissible into evidence only if each level of hearsay comes within a recognized exception to the exclusionary rule."). The issue of hearsay within hearsay has not been briefed with any legal authority nor legal arguments by Petitioner. Therefore, we decline to address the merits of the issue. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

5

on appeal unless there has been an abuse of discretion." Syl. pt. 12, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2017). *See* Syl. pt. 3, *State ex rel. Smith v. McBride*, 224 W. Va. 196, 681 S.E.2d 81 (2009) ("A trial judge's ruling on authenticity will not be disturbed on appeal unless there has been an abuse of discretion.").

It is provided under our rules of evidence that "[t]o satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." W. Va. R. Evid. 901(a). We have recognized that "the standard of admissibility under Rule 901(a) is rather slight, i.e., is the evidence sufficient 'to support a finding' that the object is authentic." *State v. Boyd*, 238 W. Va. 420, 443, 796 S.E.2d 207, 230 (2017) (citation omitted). Courts have acknowledged that "[t]he authentication of social media poses unique issues regarding what is required to make a prima facie showing that the matter is what the proponent claims." *Smith v. State*, 136 So. 3d 424, 432 (Miss. 2014). One court addressed the issue as follows:

> The need for authentication arises in this context because an electronic communication, such as a Facebook message, an e-mail or a cell phone text message, could be generated by someone other than the named sender. This is true even with respect to accounts requiring a unique user name and password, given that account holders frequently remain logged into their accounts while leaving their computers and cell phones unattended. Additionally, passwords and website security are subject to compromise by hackers. Consequently, proving only that a message came from a particular account, without further authenticating evidence, has been held to be inadequate proof of authorship.

6

*State v. Eleck*, 130 Conn. App. 632, 638-39, 23 A.3d 818, 822 (2011).  A general procedure

for authenticating social media evidence has been summarized as follows:

> [A]uthentication [of] social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender.

*Commonwealth v. Danzey*, 210 A.3d 333, 338 (Pa. 2019) (citation omitted).  *See State v.*

*Bitner*, No. 51179-7-II, 2019 WL 2598731, at *3 (Wash. Ct. App. June 25, 2019) ("[T]ext

message evidence can be authenticated based on its contents and substance, 'taken in

conjunction with the circumstances.'"); *Commonwealth v. Davis*, No. 1055 MDA 2018,

2019 WL 2323815, at *5 (Pa. Super. Ct. May 31, 2019) (finding text message authenticated

because "there was first-hand corroborating testimony from ... [the] recipient"); *People v.*

*Ziemba*, 100 N.E.3d 635, 648 (Ill.App. 2018) (finding text messages authenticated by

"undercover officer who personally sent and received the text messages contained in

People's exhibit No. 2"); *State v. Roseberry*, 197 Ohio App. 3d 256, 270, 967 N.E.2d 233,

244 (2011) ("[I]n most cases involving ... texts, instant messaging, and e-mails, the

photographs taken of the print media or the printouts of those conversations are

authenticated, introduced, and received into evidence through the testimony of the recipient

of the messages.").

The decision in *In re T.P.D.C.*, 440 P.3d 634 (Mont. 2019) (unpublished) illustrates the minimal requirement for authenticating text messages between two people. In that case the mother of a child filed a petition to terminate the parental rights of the father of the child. The petition was denied. On appeal one of the issues raised by the mother was that text messages between her and the father of the child were not properly authenticated. The appellate court disagreed as follows:

> Finally, Mother argues that the District Court erroneously admitted copies of text message conversations between Mother and Father into evidence. Mother first argues that there was insufficient foundation, because Mother stated she could not remember the texts. Second, she maintains that the printouts of the texts were not originals under M. R. Evid. 1001, and the court could not admit a duplicate because she had raised a question as to the authenticity of the original messages. Mother is mistaken that her testimony was required to authenticate the text messages. Father, as one party to the conversation, had firsthand knowledge of their authenticity and provided sufficient testimony that the printouts of the text messages were what he claimed them to be. Any questions regarding Father's credibility would go to the weight of the evidence, not to its admissibility.

*In re T.P.D.C.*, 440 P.3d 634.

The decision in *Commonwealth v. Murray*, 174 A.3d 1147 (Pa. Super. 2017) fashioned a general test for authenticating text messages. In *Murray* the defendant was convicted, following a bench trial, of possession of a firearm by a prohibited person. One of the issues raised on appeal by the defendant was that the State failed to authenticate text messages attributed to him. The appellate court disagreed with the defendant and concluded, as did the trial court, that the text messages were authenticated based upon the

contextual clues in the messages. In rendering this conclusion, the opinion applied the following test for authenticating text messages:

> text messages may be authenticated by: (1) testimony from either the author or the sender; (2) circumstantial evidence, including distinctive characteristics like information specifying the author-sender or reference to or correspondence with relevant events preceding or following the message; or (3) any other facts or aspects of the [message] that signify it to be what its proponent claims.

*Murray*, 174 A.3d at 1156-57 (internal quotations and citations omitted). *See Tyler v. State*, No. 05-15-00354-CR, 2016 WL 280032, at \*2 (Tex. App. Jan. 22, 2016) (internal quotations and citations omitted) ("As with other types of evidence, text messages may be authenticated by evidence sufficient to support a finding that the matter is what its proponent claims. This can be accomplished in myriad ways, depending upon the unique facts and circumstances of each case, including through the testimony of a witness with knowledge or through evidence showing distinctive characteristics."); *Rodriguez v. State*, 128 Nev. 155, 162, 273 P.3d 845, 849 (2012) ("[W]hen there has been an objection to admissibility of a text message … the proponent of the evidence must explain the purpose for which the text message is being offered and provide sufficient direct or circumstantial corroborating evidence of authorship in order to authenticate the text message as a condition precedent to its admission.").

In light of the foregoing authorities, we now hold that under Rule 901(a) of the West Virginia Rules of Evidence, social media text messages may be authenticated in numerous ways including, for example, by a witness who was a party to sending or

9

receiving the text messages, or through circumstantial evidence showing distinctive characteristics that link the sender to the text messages.

In the instant case the Petitioner characterizes the Facebook text messages as photographs and argues that a proper foundation was not laid as required by the procedures used in *State v. Palmer*, No. 14-0862, 2016 WL 3176472 (W. Va. June 3, 2016) (Memorandum Decision).[11]  According to Petitioner, under *Palmer* the trial court was required, among other things, to conduct an in-camera review of the text messages and other documents subpoenaed from Facebook.[12]  *Palmer* does not impose such a

---

[11] The Petitioner appears to characterize the text messages as photographs that require an authentication independent of the text messages.  However, the Petitioner's brief does not set out any argument, along with legal authority, addressing the issue of admissibility of photographs.  We therefore decline to address the photograph issue independent of the text messages. *See State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal") (internal quotations and citation omitted).  We will note simply in passing that, under the facts of this case, it would appear that no special authentication procedure was necessary for authenticating the photographs independent of the text messages. *See People v. Cotto*, 164 A.D.3d 826, 827, 79 N.Y.S.3d 535, 536 (2018) ("The complainant's testimony that the photographs of the text messages fairly and accurately depicted the text message conversation between her and the defendant was sufficient to authenticate the photographs."); *United States v. Davis*, 918 F.3d 397, 403 (4th Cir. 2019) (affirming authentication of photographs of test messages); *Duvall v. State*, 2018 Ark. App. 155, 12, 544 S.W.3d 106, 113–14 (2018) (finding sufficient circumstantial evidence to authenticate photographs of text messages).

[12] The Petitioner briefed the procedures used in *Palmer* in his first assignment of error and argued that they should have been used.  However, the Petitioner set out the same argument in his second assignment of error and asked this Court to address the matter under plain error. *See State v. Miller*, 194 W. Va. 3, 18, 459 S.E.2d 114,

10

requirement. The defendant in *Palmer* appealed from his conviction for first degree murder

of his father-in-law. One of the issues raised was that the State did not properly

authenticate an e-mail containing a reference to a Facebook post and comments about the

post. In the Facebook post the defendant essentially stated that he had a mental list of

people he was going to "strike" because they did him and his wife wrong. This post was

authenticated by a witness who had a conversation with the defendant on Facebook and

believed that the statement in the Facebook post was made by the defendant based on the

manner of speech used in the post, the Facebook profile picture of defendant, and the fact

that the content of the post was something only the witness and defendant had knowledge

of, the decision in *Palmer* indicated that in addition to having the witness authenticate the

post, the circuit court did the following:

> In the instant case, the circuit court completed an appropriate analysis of the
> authenticity of the document prior to its admission at trial. Additionally, the
> circuit court, prior to admission of the document, conducted an in camera
> review of the exhibit and other corresponding documents subpoenaed from
> Facebook and jail telephone calls between petitioner and his family
> members, which substantiated the information contained within the exhibit.
> Moreover, the circuit court permitted petitioner to proffer the testimony of
> an expert witness regarding the ability to easily fabricate a Facebook page to
> rebut this exhibit.

129 (1995) ("The 'plain error' doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made."). The State properly notes that application of the *Palmer* procedures is not properly before this Court, because the Petitioner did not object below to the procedure used by the circuit court in admitting the text messages. Our analysis of *Palmer* on the merits of that case disposes of the need to address the plain error argument.

11

*Palmer*, 2016 WL 3176472, at *5. The procedures used by the circuit court in *Palmer*, before it admitted the Facebook post, were procedures the circuit court believed should be followed under the unique facts of that case. The mere fact that the Memorandum Decision in *Palmer* outlined the authenticity procedures used by the circuit court, did not render those procedures mandatory for authenticating all future social media exhibits. Moreover, this Court does not create new and binding principles of law in Memorandum Decisions. *See* Syl. pt. 1, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) ("Signed opinions containing original syllabus points have the highest precedential value because the Court uses original syllabus points to announce new points of law or to change established patterns of practice by the Court."). [13]

In contrast to *Palmer*, where there was simply a Facebook post that was traced to the defendant, in the instant case the Facebook Messenger text messages involved communication between two people—the Petitioner and his daughter A.W.[14] During the trial A.W. authenticated the text messages based upon the following questioning by the State:

---

[13] *See also* Syl. pt. 5, in part, *McKinley* ("While memorandum decisions may be cited as legal authority, and are legal precedent, their value as precedent is necessarily more limited.").

[14] During the trial the investigating officer, Trooper A.M. Pringle, testified that he executed a search warrant to examine the Facebook Messenger database, and that he took the photographs of the text messages between Petitioner and A.W.

Q. Do you recognize this message to be a conversation between you and your dad, correct?

A. Yeah

\*\*\*

Q. Let me ask you this: If you could take a look at the top line, what you said, and the pink that is what you said, right? Don't say it out loud.

A. (Indicated yes)

Q. Do you recall saying that to your dad?

A. Yes.

Q. Do you recall his response?

A. I guess.

Q. And what you see on the rest of that, could you recall the rest of that?

Y. Yes.

Q. What about this second page? It has a little bit of overlap from the first, right, but then the rest of that page, do you recall that?

A. Yes.

Q. What about the third page?

A. Yes.

Q. And the fourth page?

A. Yes.

Q. That up there, does that indicate you were talking to your dad?

A. Yes.[15]

---

[15] The following is the Facebook Messenger text messages between the Petitioner and A.W.

[A.W.] He said he couldn't come so we are just gonna wait

[Petitioner] I still want it tonight or it ain't going to happen at all.

[A.W.] When jr. Leaves

[Petitioner] What I want

[A.W.] When jr. Leaves she will[.] It has to be dark, she feels uncomfortable when it's daylight.

[Petitioner] It's dark in my room anyway

We find that A.W.'s identification of the content of the Facebook Messenger text messages as a conversation she had with Petitioner was sufficient to authenticate the text messages.[16] Consequently, we find no error in the circuit court's admission of the text messages.[17]

## B.
## Denial of Motion for Judgment of Acquittal

---

[A.W.] True[.] But can we at least wait till jr. Leaves?

[Petitioner] Hey

[A.W.] Not tonight[.] [H.A.] is upset n [J.L.] said not tonight

[Petitioner] I need it tonight[.] Oh bull

[A.W.] U had some last night Ur fine

[Petitioner] I ain't going to argue over it[.] Whatever

[A.W.] Ok night love you

[Petitioner] Whatever[.] Tell her please I just ask for a few minutes of something and I can't even get that

[16] The Petitioner also argued that the text messages should not have been admitted because the circuit court initially ruled that a foundation had not been laid to admit the text messages. The circuit court's initial ruling is of no moment, because the circuit court later determined that a foundation for admission was made after further questioning of A.W. It has been appropriately noted that "[i]n ascertaining whether [a] foundation has been established, we can … consider all the evidence … regardless of the order of proof." *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1349 (9th Cir. 1981).

[17] During jury deliberations the jury requested to see the text messages. The trial judge allowed the text messages to be sent to the jury, without objection by the Petitioner. In this appeal the Petitioner appears to be asking this Court to invoke plain error to find that it was improper for the jury to view the text messages during its deliberations. We decline to do so. See Syl. pt. 5, *First Nat. Bank v. Barker*, 75 W. Va. 244, 83 S.E. 898 (1914) ("The jury may, by leave of the court, take to their room all papers properly put in evidence on the trial."); *W. Virginia Dep't of Transp., Div. of Highways v. Parkersburg Inn, Inc.*, 222 W. Va. 688, 700, 671 S.E.2d 693, 705 (2008) ("It has been recognized that [i]tems of documentary or real evidence that were admitted into evidence may be taken into closed sessions during [jury] deliberations.") (internal quotation marks and citation omitted).

14

The Petitioner contends that the circuit court erred in denying his motion for judgment of acquittal, at the close of the State's case-in-chief, because the evidence was insufficient in view of the "inherently incredible" testimony of the two victims. The State argues that "[t]he Petitioner misunderstands the law of inherent incredibility and, as such, has failed to show his entitlement to relief." We agree.

This "Court applies a *de novo* standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011). We have further explained:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Finally, we held in

*Guthrie*,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside

15

only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. pt. 3, *Guthrie*.

We have recognized that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syl. pt. 5, *State v. Beck*, 167 W. Va. 830, 286 S.E.2d 234 (1981). It has been recognized that the bar has been set extremely high for declaring testimony inherently incredible. *See Rea v. Suthers*, 402 F. App'x 329, 331 (10th Cir. 2010) ("[T]he standard for establishing that witness testimony is incredible as a matter of law is exceptionally high."). To establish inherent incredibility, a defendant must show "more than contradiction and lack of corroboration." *State v. McPherson*, 179 W.Va. 612, 617, 371 S.E.2d 333, 338 (1988). It is "[o]nly when testimony is so unbelievable on its face that it defies physical laws should the court intervene and declare it incredible as a matter of law." Syl. pt. 8, *State v. Smith*, 178 W. Va. 104, 358 S.E.2d 188 (1987). *See McPherson*, 179 W.Va. at 617, 371 S.E.2d at 338 ("[W]hen a trial court is asked to grant a motion for acquittal based on insufficient evidence due to inherently incredible testimony, it should do so only when the testimony defies physical laws.").

In this appeal Petitioner argued that "the testimony of the girls, H.A., J.L., and A.W., contained contradictions making their testimony inherently incredible." The Petitioner does not cite to testimony in the record that was inherently incredible. Instead,

16

the Petitioner merely cites to, and quotes from, defense counsel's closing argument. We find that defense counsel's summation of the evidence was not completely accurate, and even if it was, Petitioner needed to cite to the specific testimony in the record that he believed was inherently incredible. *See State v. Prophet*, 234 W. Va. 33, 46, 762 S.E.2d 602, 615 (2014) ("[A]nything said by the lawyers during the trial is not to be considered evidence."); *Crum v. Ward*, 146 W. Va. 421, 465, 122 S.E.2d 18, 42 (1961) (Haymond, P., dissenting) ("[T]he argument of counsel is not evidence and may not be considered as such[.]"). In our independent review of the testimony of the victims and A.W., we found some inconsistencies in their recollection of events, but nothing remotely bordering on inherently incredible testimony. H.A. testified to being sexually assaulted by Petitioner on five occasions and that she saw Petitioner sexually assault J.L. J.L testified that H.A. was in the room when Petitioner sexually assaulted her. A.W. testified that Petitioner sent her the text messages asking to have sex with H.A. or J.L. The jury heard the testimony of the victims, and A.W., and found that testimony to be credible. *See Guthrie*, 194 W. Va. at 669 n.9, 461 S.E.2d at 175 n.9. ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). When viewed in the light most favorable to the State, the evidence clearly supports the jury's verdict beyond a reasonable doubt. As such, we find no error in the trial court's denial of Petitioner's motion for judgment of acquittal at the close of the State's case-in-chief.

## C.
## The Use of Peremptory Strikes to Remove Three Potential Jurors

The Petitioner argues next that the circuit court committed error in denying his motion to strike three potential jurors for cause. The State contends that this issue has no merit because the Petitioner used peremptory strikes to remove the three potential jurors.

As a general matter we have held that a "trial court has broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice is demonstrated." *State v. Miller*, 197 W. Va. 588, 605, 476 S.E.2d 535, 552 (1996). In *Miller* this Court formulated, and we now hold, a three-part standard of review of a trial court's ruling on juror qualifications.

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

*Miller*, 197 W. Va. at 600-01, 476 S.E.2d at 547-48. In syllabus point 3 of *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013) we held the following regarding the use of a peremptory strike to remove a potential juror:

> A trial court's failure to remove a biased juror from a jury panel, as required by W.Va. Code § 62–3–3 (1949) (Repl.Vol.2010), does not violate a criminal defendant's right to a trial by an impartial jury if the defendant removes the juror with a peremptory strike. In order to obtain a new trial for having used a peremptory strike to remove a biased juror from a jury panel, a criminal defendant must show prejudice. The holding in Syllabus point 8 of *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995), is expressly overruled.

18

Finally, in *State v. Rollins*, 233 W. Va. 715, 760 S.E.2d 529 (2014) we pointed out the type

of prejudice that is required under *Sutherland*:

> the test that must be satisfied when a defendant has removed a biased juror
> … has been stated in different ways, but essentially, a challenge must show
> that the appellant was forced to accept a juror who should have been excused
> for cause. That is, appellate courts will not find reversible error based on the
> trial court's refusal to remove that juror for cause unless the resulting jury
> was not fair and impartial.

*Rollins*, 233 W. Va. at 729, 760 S.E.2d at 543 (internal quotation marks and citations

omitted).

The Petitioner states that based upon the responses to questions by three

potential jurors, D. Hodge, D. Sparks, and S. Harper, they should have been struck for

cause. During jury voir dire Juror Hodge stated that she had a friend who was sexually

assaulted and that she knew staff in the prosecutor's office. Juror Sparks stated that she

knew the prosecutor and that she worked with his mother; that she was a former teacher of

a witness, A.W.; and that her daughter was sexually assaulted. Juror Harper stated that she

knew the victims and that she was sexually assaulted as a child. Petitioner argues that the

responses of these three jurors were grounds for removal for cause.[18] Petitioner contends

that by utilizing peremptory strikes to remove the jurors, he was "prejudiced by being

unable to properly utilize his peremptory strikes to obtain a fair and balanced jury free from

other individuals seating [sic] on the jury with whom Petitioner would have otherwise

---

[18] The record indicates that the trial court refused to strike the jurors for cause after
they each ultimately stated that they could fairly and impartially decide the case.

19

struck with his peremptory strikes." The State correctly asserts that Petitioner has not shown prejudice as required by *Sutherland* and its progeny. Petitioner has simply made an unsupported statement that he would have struck other jurors who sat on the jury. Petitioner failed to allege any facts to show that a juror who sat on the jury was biased, and thereby prejudiced his right to a fair trial. Consequently, we find no merit to this assignment of error. *See State v. Younkins*, No. 17-0962, 2018 WL 5099641, at *3 (W. Va. Oct. 19, 2018) (Memorandum Decision) (defendant failed to present evidence of bias or prejudice in jury that heard case); *State v. Mullins*, No. 17-0391, 2018 WL 2928096, at *4 (W. Va. June 11, 2018) (Memorandum Decision) (same); *State v. Redman*, No. 15-1039, 2017 WL 678854, at *7 (W. Va. Feb. 21, 2017) (Memorandum Decision) (same); *State v. Thompson*, No. 15-0292, 2016 WL 4611128, at *5 (W. Va. Sept. 6, 2016) (Memorandum Decision) (same); *State v. White*, No. 15-0344, 2016 WL 2977322, at *4 (W. Va. May 23, 2016) (Memorandum Decision) (same); *State v. Lewis*, No. 14-1234, 2015 WL 5125476, at *2 (W. Va. Aug. 31, 2015) (Memorandum Decision) (same); *State v. Fannin*, No. 14-0797, 2015 WL 2364295, at *3 (W. Va. May 15, 2015) (Memorandum Decision) (same); *State v. Jerry R.*, No. 13-1107, 2014 WL 6634307, at *2 (W. Va. Nov. 24, 2014) (Memorandum Decision) (same); *State v. Parsons*, No. 13-0615, 2014 WL 629419, at *3 (W. Va. Feb. 18, 2014) (Memorandum Decision) (same); *State v. Bowling*, 232 W. Va. 529, 539, 753 S.E.2d 27, 37 (2013) (same).

**Two Jurors were Facebook Friends with Prosecutor**

The next issue raised by Petitioner concerns an alleged Facebook "friends" relationship between the prosecutor and two jurors who sat on the case. The State argues that this issue is not properly before this Court, because there is nothing in the record to show that the issue was presented to the circuit court.[19] The State correctly cites to authorities that recognize "[a] party can not establish facts in a case by asserting them in a brief. Those are nothing more than an attorney's statements, which are not evidence." *City of Helena v. Whittinghill*, 353 Mont. 131, 137, 219 P.3d 1244, 1248 (Mont. 2009) (citation omitted). See *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008) ("Counsel's unsupported statements are, of course, not evidence.").

We disposed of a similar type of issue in *State v. Rager*, 199 W. Va. 294, 484 S.E.2d 177 (1997). The defendant in that case was convicted of robbery and brandishing. On appeal the defendant sought a new trial based upon newly discovered evidence. The problem presented for this Court in *Rager* was that "the question of the newly discovered evidence was never presented to the circuit court." *Rager*, 199 W. Va. at 296-97, 484 S.E.2d at 179-80. We declined to address the issue based upon the following:

---

[19] The procedurally troubling aspect of this issue is that Petitioner failed to set out any facts as to how and when he learned that two jurors were Facebook friends with the prosecutor.

We begin our discussion by noting that the question of the newly discovered evidence was never presented to the circuit court. This Court has before it only the allegations of newly discovered evidence contained in the defendant's brief and supplemental brief…. Without an adequate record, this Court lacks the information necessary to decide. We have long held that we will not consider assignments of error presented for the first time on appeal or which might had been remedied by the circuit court upon proper objection. Syllabus Point 17 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) states:

> As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.

We find that the assignment of error based on newly discovered evidence is not ripe for direct appellate review…. A habeas corpus proceeding appears to be the appropriate procedure for the defendant to have the newly discovered evidence considered by the circuit court.

*Rager*, 199 W. Va. at 296-97, 484 S.E.2d at 179-80 (citations omitted).

Consistent with *Rager*, we find the issue of two jurors being Facebook friends with the prosecutor is not ripe for review on direct appeal. The Petitioner may raise this issue in a habeas corpus proceeding. *See* Syl. pt. 2, *Sands v. Sec. Tr. Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958) ("This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.").

## E.
### Limiting Testimony of Character Witnesses

The Petitioner contends that the trial court committed error in refusing to permit him to introduce evidence of his character for honesty.[20] The State argues that the circuit court properly excluded the evidence because it was not relevant to the offenses brought against the Petitioner. We agree.

This Court has held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994). *See* Syl. pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings,

---

[20] The Petitioner argued in his brief that the circuit court erred in not allowing him to introduce evidence of his honesty and trustworthiness. Although Petitioner argued below that he should be allowed to introduce evidence of his honesty and trustworthiness, the trial court actually only prohibited the Petitioner from presenting evidence of his honesty. Specifically, the circuit court ruled:

> The defendant has requested that he be able to … discuss the issue of honesty. The Court would believe that would be improper to bring up in the context of character evidence; believing that honesty is not necessarily a character trait which is relevant to the offense for which the defendant stands charged.

For the purpose of this appeal, we will treat the terms honesty and trustworthiness as being synonymous. *See Black's Law Dictionary Tenth Edition* (2014) (defining honesty to mean, "The character or quality of being truthful and trustworthy.").

23

as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

Prior to the adoption of our rules of evidence, this Court followed the general rule that "[i]n a criminal prosecution, evidence of the previous good character of the defendant is always admissible; but it should be confined to the trait of character at issue." Syl. pt. 5, *State v. Moyer*, 58 W. Va. 146, 52 S.E. 30 (1905). That is, character evidence "should bear some analogy and reference to the charge." *State v. Padgett*, 93 W. Va. 623, 117 S.E. 493, 495 (1923). *See State v. Scalf*, 254 Iowa 983, 988, 119 N.W.2d 868, 870 (1963) ("There is no value in a question relating to a trait not pertinent to the issue in the case on trial."); *State v. Quinn*, 344 Mo. 1072, 1078, 130 S.W.2d 511, 515 (1939) ("[C]haracter evidence must be limited to proof of the existence of the particular trait, or group of traits involved in the doing of an act like the one which is the subject of the investigation in which the evidence is offered."); *People v. Haydon*, 18 Cal. App. 543, 566, 123 P. 1102, 1112 (1912) ("[T]he true rule as to character evidence is that such testimony ought always to be confined to the trait of character which is in issue, or ought to bear some analogy and reference to the nature of the charge."). This common law rule is now embodied in Rule 404 of the West Virginia Rules of Evidence. *See State v. Marrs*, 180 W. Va. 693, 696, 379 S.E.2d 497, 500 (1989) ("W.Va R. Evid. 404 codifies the common law rules on the admission of character evidence.").

Rule 404 generally prohibits the use of character evidence to prove that a person acted in conformance with his or her character, unless such evidence satisfies one of its enumerated exceptions. One of the exceptions in the rule is contained in Rule 404(a)(2)(A), which states that "a defendant may offer evidence of the defendant's pertinent trait[.]"[21] The commentators on our Rules of Evidence have explained the meaning and limitations of the phrase "pertinent trait" found in Rule 404(a)(2)(A):

> The term "pertinent trait" in Rule 404(a)(2)(A) means that the trait or traits are relevant to the offense charged or any other issue of consequence to the case. For example, in a trial for murder, defense evidence of good character of the accused as to honesty is not admissible, because an honest person may be as likely to commit murder as a dishonest person. On the other hand, evidence of good character as to peacefulness would be admissible in any prosecution for an offense involving violence, but it would be inadmissible in a prosecution for a nonviolent theft offense because it is irrelevant.

Louis J. Palmer, Jr., et al., Vol. 1, *Handbook on Evidence for West Virginia Lawyers*, § 404.03[2][a], pgs. 336-37 (6th ed. 2015). In the final analysis, "relevant traits of character will vary according to the offense being submitted and are distinguishable from evidence admissible to impeach a witness." *State v. Gateley*, 907 S.W.2d 212, 219 (Mo. Ct. App. 1995). *See Mark Lynn J. v. Ballard*, No. 15-1034, 2017 WL 700852, at *35 (W. Va. Feb. 21, 2017) (Memorandum Decision) (in habeas proceeding it was held that evidence that defendant, who was convicted of sexual offenses, was not a danger to children "would not have been admissible during the trial, because it is not evidence of a pertinent trait");

---

[21] It should be noted that "[u]nlike an affirmative defense, character evidence is never legally sufficient to render a defendant not guilty. Standing alone, however, character evidence may create a reasonable doubt regarding guilt." *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002).

*Guthrie*, 194 W. Va. at 681, 461 S.E.2d at 187 ("Quite clearly, evidence that the defendant was a 'Bible-reading man' and his religious beliefs are not admissible under the same rule because they simply do not concern a pertinent character trait."); *Marrs*, 180 W. Va. at 697, 379 S.E.2d at 501 (evidence of defendant having "reputation … for not selling illegal drugs is not admissible character evidence under Rule 404").[22]

[22] Federal courts are in accord with the meaning of "pertinent trait" found in federal Rule 404(a)(2)(A). *See United States v. Al Asai*, No. 3:16-CR-00149-01-RGJ, 2018 WL 5816769, at \*4 (W.D. Ky. Nov. 6, 2018) ("'Pertinence' is generally defined as relevance, meaning that the offered trait must have some tendency to prove or disprove an element of the offense charged or of a claimed defense."); *United States v. Navedo-Ramirez,* 781 F.3d 563, 569 (1st Cir. 2015) ("[T]he district court permissibly concluded that the character trait that the evaluations purport to show— general competence at her job as a police officer—is not 'pertinent' to the drug and gun possession crimes of which Navedo–Ramirez was convicted."); *United States v. Williams*, No. 6:14-CR-10, 2014 WL 12634962, at \*1 (S.D. Ga. Sept. 18, 2014) ("'[P]ertinent' apparently is synonymous with 'relevant,' and the relevance of evidence regarding a character trait is to be determined with reference to the characteristics of the proffered trait and the elements of the charged offense."); *John*, 309 F.3d at 303 ("In the criminal context, a pertinent character trait is one that is relevant to the offense charged."); *United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000) ("Thus, Rule 404(a)(1) requires only that the proffered evidence of a character trait relate to some element at issue in the case."). *See also, Commonwealth v. Nuttall*, No. 1647 WDA 2015, 2016 WL 6996350, at \*13 (Pa. Super. Ct. Nov. 30, 2016) ("Under Pa.R.E. Rule 404(a)(2)(A), a criminal defendant may introduce evidence of a 'pertinent' character trait. 'Pertinent' means relevant to the crimes charged."); *People v. Yee*, No. G027598, 2002 WL 31661266, at \*15 (Cal. Ct. App. Nov. 26, 2002) ("In other words, the character or trait of character must be relevant to the charge."); *State v. Enakiev*, 175 Or. App. 589, 595, 29 P.3d 1160, 1163 (2001) ("[A] 'pertinent' character trait is one that is relevant to the offense charged."); *State v. McGraw*, 204 Conn. 441, 448, 528 A.2d 821, 824 (1987) ("To be admissible, the character evidence that a defendant seeks to introduce must be limited to specific traits and relevant to the offense charged.").

It has been recognized that "an accused's character for … honesty is not pertinent in every case." *People v. Miller*, 862 P.2d 1010, 1012 (Colo. App. 1993), rev'd on other grounds, 890 P.2d 84 (Colo. 1995). The issue of whether honesty is a pertinent character trait in a prosecution for sexual offenses was addressed in *People v. Edgin*, No. H043305, 2018 WL 3031767 (Cal. Ct. App. June 19, 2018). In that case the defendant was convicted of two counts of sexual intercourse with a child, three counts of lewd or lascivious acts on a child, and one count of continuous sexual abuse of a child. On appeal one of the issues raised by the defendant was that the trial court committed error in excluding testimony about his honesty. The appellate court disagreed as follows:

> Amanda, Melody, and Justin opined that defendant was honest. But a character trait for honesty is not directly relevant to the charges of sexual molestation. The Supreme Court held … that character evidence is relevant if it is inconsistent with the offense charged—e.g., honesty, when the charge is theft—and hence may support an inference that the defendant is unlikely to have committed the offense. Here, a character trait for honesty would not be inconsistent with the offenses charged, making such evidence irrelevant…. The trial court therefore did not abuse its discretion by excluding opinions about defendant's honesty.

*Edgin*, 2018 WL 3031767, at *10 (internal quotations and citation omitted). *See United States v. Al Asai*, 2018 WL 5816769, at *4 (W.D. Ky. Nov. 6, 2018) ("Further, evidence of character traits for truthfulness and honesty have been held admissible when the defendant is charged with an offense in which fraud is one of its statutory elements."); *State v. Ross*, No. 22958, 2010 WL 761323, at *9 (Ohio Ct. App. March 5, 2010) ("Relevant character traits include a defendant's reputation for sobriety in a driving-while-intoxicated case, a defendant's reputation for honesty and fair dealing in a fraud case, and a defendant's

27

reputation for being peaceful and law-abiding in a sexual-assault case."); *State v. Mizell*, 332 S.C. 273, 281, 504 S.E.2d 338, 343 (1998) ("[A] defendant charged with criminal sexual conduct would not be allowed to produce evidence of his good character for honesty in order to prove that he did not commit criminal sexual conduct.") (internal quotation marks and citation omitted); *State v. Vogel*, 247 Neb. 209, 214, 526 N.W.2d 80, 84 (1995) ("Rule 404 forbids introduction of a character trait unless the trait is pertinent to the crime charged. Therefore, the character traits of honesty or truthfulness would not be admissible to the charge of sexual assault or murder."); *State v. Culkin*, 791 S.W.2d 803, 812 (Mo. Ct. App. 1990) ("Unlike larceny and robbery, rape and sodomy are physical crimes committed against another person for which there is no financial motive. We, therefore, find that defendant's reputation for honesty does not require an instruction on character in a prosecution for rape and sodomy."); *Wiggins v. State*, 778 S.W.2d 877, 893 (Tex. App. 1989) ("Unless evidence of the trait of honesty is pertinent to the charge of aggravated sexual assault, rule 404 forbids its introduction as circumstantial evidence of innocence of that offense. We conclude that … the character trait of honesty is not involved in the offense of aggravated sexual assault. Consequently, we conclude that it was inadmissible evidence[.]"); *State v. Case*, 247 Iowa 1019, 1025, 75 N.W.2d 233, 237 (1956) ("For example, upon a charge of homicide the traits of character usually involved are whether accused is peaceable and law-abiding. In larceny and robbery the traits involved are honesty and integrity. Upon a charge of perjury the traits are truth and veracity. In sex crimes, at least where (as here) force and violence are absent, the trait involved is

28

morality."); Palmer, *Handbook on Evidence*, § 404.03[2][a], pg. 339 (citing honesty as a character trait pertinent to a theft charge). *But see*, *People v. Robinson*, No. 329755, 2017 WL 603563, at *3 (Mich. Ct. App. Feb. 14, 2017) (relying on codified jury instruction that permits character testimony of defendant's honesty in sexual assault cases); *State v. Allen*, 193 N.C. App. 455, 667 S.E.2d 340 (2008) (permitting character evidence of honesty in sexual assault case).

In view of the foregoing, we hold that under Rule 404(a)(2)(A), of the West Virginia Rules of Evidence, a defendant in a criminal prosecution may offer evidence of the defendant's pertinent character trait. Further, under Rule 404(a)(2)(A), of the West Virginia Rules of Evidence, "honesty" is not a pertinent character trait of a criminal defendant who is being prosecuted on a sexual offense charge.

In the instant case, the Petitioner was precluded from introducing character evidence of his honesty. Insofar as all of the charges against the Petitioner involved sexual offenses, the character trait of honesty was not relevant. Consequently, there was no error in the circuit court's ruling excluding such evidence.

**F.**
**Proportionality of Sentence**

The Petitioner argues that his consecutive aggregate sentence of 131 to 295 years in prison shocked the conscience and was disproportionate.[23]   The State contends that the sentences imposed were lawful and are not reviewable on appeal.

This Court "reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."  Syl. pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).  It was held in syllabus point five of *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983) that:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

The test for determining whether a sentence is constitutionally infirm was set out in syllabus point 5 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981) as follows:

---

[23] The Petitioner also argued under this assignment of error that the circuit court failed to consider a forensic psychological evaluation that he submitted.  This issue was presented without citation to any legal authority or analysis.  Merely citing to some of the facts involved with an issue does not satisfy the requirements of West Virginia Rule of Appellate Procedure 10(c)(7), which requires that the brief "contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on[.]"  For this reason, we decline to address the merits of this issue. *See State v. Trail*, 236 W. Va. 167, 186, 778 S.E.2d 616, 635 (2015) ("This Court previously has found issues asserted on appeal to have been waived as a result of a petitioner's failure to comply with Rule 10(c)(7).").

In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

We further explained in syllabus point 4 of *Wanstreet* that "[w]hile our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."

We need not engage in an extended analysis of the *Wanstreet* factors for two reasons. First, the Petitioner has inadequately briefed the issue. Other than cite to the per curiam decision in *State v. David D. W.*, 214 W. Va. 167, 588 S.E.2d 156 (2003), the Petitioner has not briefed the sentencing issue in the framework set out in syllabus point 5 of *Wanstreet*.[24]  The Petitioner has provided a "skeletal" argument that is unsupported by legal analysis and pertinent authorities.  We have held that "a skeletal argument, really nothing more than an assertion, does not preserve a claim." *State v. Fleming*, 237 W. Va.

---

[24] In *David D.W.* this Court set aside a sentence of 1,140 to 2,660 years in prison as disproportionate.  The Petitioner's citation to *David D.W.* is misplaced in light of this Court's disapproval of that case in *Slater.  See Slater*, 222 W. Va. at 508 n.11, 665 S.E.2d at 683 n.11 (commenting that *David D.W.* was a "per curiam opinion in which established law was disregarded in order to find that a sentence within statutory limits was unconstitutional"); *Carl T. v. Ballard*, No. 15-0649, 2016 WL 3193467, at *2 (W. Va. June 3, 2016) (Memorandum Decision) (observing that in *Slater* "we disapproved of *David D.W.*").  We once again note that the sentencing analysis in *David D.W.* is of no precedential value, as it was inconsistent with well established principals of law.

44, 58, 784 S.E.2d 743, 757 (2016) (internal quotations and citations omitted).  Second, and more importantly, the individual sentences imposed on Petitioner have fixed maximums, and it did not involve a recidivist sentence.[25]  As a general rule, we have held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review."  Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).  Finally, as we stated in *Slater*, "[w]e deem it generally to be the better practice to decline to review sentences that are within statutory limits and where no impermissible sentence factor is indicated in accord with Syllabus Point 4 of *State v. Goodnight*." *Slater*, 222 W. Va. at 508, 665 S.E.2d at 683. *See State v. Edward H.*, No. 17-1116, 2019 WL 181476, at *4 (W. Va. Jan. 14, 2019) (Memorandum Decision) ("declin[ing] to undertake a proportionality analysis" of a sentence of 168 to 465 years in prison); *State v. Mullins*, No. 17-0391, 2018 WL 2928096, at *5 (W. Va. June 11, 2018) (Memorandum Decision) (finding it "unnecessary to address petitioner's argument

---

[25] The minimum/maximum sentence for sexual assault in the second degree under W. Va. Code § 61-8B-4(b) (1991) is not less than ten nor more than twenty-five years incarceration.  The minimum/maximum sentence for sexual abuse in the first degree under W. Va. Code § 61-8B-7(b) (2006) is not less than one nor more than five years of incarceration.  The minimum/maximum sentence for sexual abuse by a custodian under W. Va. Code § 61-8D-5(a) (2010) is not less than ten nor more than twenty years of incarceration.  As we mentioned earlier in this opinion, the Petitioner's sentences were ordered to run consecutively.  *See* Syl. pt. 3, *Keith v. Leverette*, 163 W. Va. 98, 254 S.E.2d 700 (1979) ("When a defendant has been convicted of ... separate crimes, before sentence is pronounced ..., the trial court may, in its discretion, provide that the sentences run concurrently, and unless it does so provide, the sentences will run consecutively."); W. Va. Code § 61-11-21 (1923) (providing for concurrent and consecutive sentences).

32

regarding the allegedly disproportionate nature of his [8 to 120 years] sentences, because the same are not subject to appellate review"); *State v. Krise*, No. 16-0814, 2017 WL 2493288, at *3 (W. Va. June 9, 2017) (Memorandum Decision) (finding "petitioner's sentence [of 24 to 60 years] is not subject to challenge on appeal"); *Robert J. M. v. Ballard*, No. 14-1315, 2016 WL 3369556, at *12 (W. Va. June 17, 2016) (Memorandum Decision) ("declin[ing] to apply our proportionality standards in this case" because a sentence of 31 to 75 years was within statutory limits).[26]

## IV.
## CONCLUSION

---

[26] Petitioner's last two assignments of error are not properly before this Court. First, Petitioner contends that one of the jurors was asleep during the trial and the jury foreman was seen standing with the victims at the sentencing hearing. This alleged jury misconduct was not presented to the circuit court. As a general rule, "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. pt. 7, *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995) (internal quotations and citations omitted). In the last issue raised, Petitioner asserts that he received ineffective assistance of counsel during his trial. The Petitioner's brief set out numerous incidents of alleged ineffective assistance of counsel. We have held that "[i]t is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal." Syl. pt. 10, in part, *State v. Triplett*, 187 W. Va. 760, 421 S.E.2d 511 (1992). As we have explained, "the preferred way of raising ineffective assistance of … counsel is to file a subsequent petition for a writ of habeas corpus raising the issue in the court below." *Watts v. Ballard*, 238 W. Va. 730, 735 n.7, 798 S.E.2d 856, 861 n.7 (2017) (internal quotations and citation omitted). Consequently, "we decline to address an alleged ineffective assistance of counsel claim in this direct appeal. The record has not been developed on this issue. This is an issue that must be developed in a habeas corpus proceeding." *State v. Richardson*, 240 W. Va. 310, 319 n.13, 811 S.E.2d 260, 269 n.13 (2018).

In view of the foregoing, we affirm the April 4, 2018, order of the circuit court sentencing the Petitioner for his convictions on six counts of sexual assault in the second degree, seven counts of sexual abuse by a custodian, and one count of sexual abuse in the first degree.

Affirmed.